IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MATTHEW HORNUNG,

               Plaintiff,

v.

JON MADARANG, et al.,

               Defendants.

NO. C06-2340 TEH

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

       This matter came before the Court on Monday, October 30, 2006, on Defendants' motion to dismiss. After carefully considering the parties' written and oral arguments, the allegations in the complaint, and governing law, the Court now GRANTS IN PART and DENIES IN PART Defendants' motion for the reasons discussed below.

**BACKGROUND**

       Plaintiff Matthew Hornung was one of the four Oakland police officers accused as part of the "Oakland Riders" scandal. He filed this case for damages based on his contention that Defendants wrongfully and maliciously accused him of misconduct. Defendants Keith Batt, Steve Hewison, and Jon Madarang are current or former Oakland police officers. Hornung has also sued Richard Word, the former Oakland chief of police; the City of Oakland ("City"); and the Oakland Police Department ("OPD"). The first amended complaint ("FAC") alleges the following:

       Batt, an OPD trainee at the time, complained to Madarang, an internal affairs ("IA") investigator, on July 5 and 7, 2000, about the alleged actions of certain police officers, including Clarence Mabanag, Batt's field training officer, but not including Hornung. On July 7, 2000, Deputy Chief Pete Dunbar placed three officers – Mabanag, Frank Vazquez, and Jude Siapno – on administrative leave. No action was taken against Hornung.

Batt then encouraged Hewison, another OPD trainee, to come forward with similar allegations of misconduct. Hewison turned to Hornung for advice, and the two discussed incidents that occurred during the arrest of Rodney Mack. Hewison told Hornung that the police report Hewison authored regarding the Mack incident was accurate and that he did not want to lie to cover for Batt's allegations. However, Hewison later told Hornung that he felt compelled to make false allegations against the officers accused by Batt. Hornung yelled at Hewison and told him to tell IA the truth, but Hewison ultimately told IA that his report regarding the Mack incident was false. Hewison received no discipline for allegedly falsifying a report.

Following his conversations with Hewison, Hornung regularly expressed his belief that Hewison and Batt were being untruthful. Hornung reported Hewison's statements about lying to IA investigators to high-ranking OPD command officials, who in turn informed Madarang.

Defendants then decided to add Hornung to the list of subject officers (consisting of Mabanag, Vazquez, and Siapno) in an attempt to silence Hornung, prevent other OPD officers from speaking out against Batt and Hewison, and remove any credibility Hornung might have had before the court or the public. Batt and Hewison intentionally and specifically joined with Madarang, the City, and OPD to include Hornung in allegations of misconduct because they had a personal stake in avoiding being accused of lying and making false allegations.

On August 30, 2000, Madarang met with representatives from the Alameda County District Attorney's office. Hornung was subsequently placed on administrative leave on September 1, 2000.

To help put allegations of a department-wide policy and practice of violating suspects' civil rights behind them, Defendants decided to represent to the public that Mabanag, Siapno, Vazquez, and Hornung were "bad apples" who needed to be removed to clean up the department. Madarang wrote a report of more than sixty pages finding that the allegations against these four officers were well-founded. His preliminary draft of the report did not

2

1 include any allegations against Hornung, but a supervisor specifically directed Madarang to
2 revise the report to include such allegations.  Madarang's false report formed the basis for
3 criminal charges filed against all four officers on November 1, 2000.  On that date, Hornung
4 was arrested, booked, fingerprinted, and required to post bail to be released from jail.  His
5 telephone records were also seized and searched.
6     On December 20, 2000, Madarang conducted another interview with Batt by
7 telephone.  During that interview, Batt falsely accused Hornung of beating Delphine Allen.
8 These statements were made while Batt was unemployed and acting as a private citizen in his
9 individual capacity, not in any official capacity.
10     At the preliminary hearing, which occurred on several days in May, June, and July
11 2001, Batt, Hewison, and Madarang all testified in their capacity as police officers.
12 Significant and relevant portions of their testimony were false, misleading, and intentionally
13 designed to cause the court to find probable cause to support charges against Hornung.
14     Batt, Hewison, and Madarang again gave false testimony during the first criminal
15 trial, which took place between the summer of 2002 and the fall of 2003.  Hornung was
16 found not guilty of several charges, with the jury hung on all other charges.
17     The second criminal trial occurred between the summer of 2004 and spring of 2005,
18 and Batt, Hewison, and Madarang again gave false testimony at that trial.  Hornung was
19 acquitted by the jury of all criminal charges filed against him.
20     Throughout the time ranging from the initial investigation through the completion of
21 the second criminal trial, Batt, Hewison, and Madarang "engaged in intentionally and
22 deliberately making false and misleading statements, destroying or hiding exculpatory
23 evidence, intentionally creating false documentary evidence, and then providing further false
24 testimony to cover up the creation of the false documentary evidence, and encouraging other
25 witnesses to lie."  FAC ¶ 45.  They did all of the above "with the plain intent and design to
26 obtain guilty verdicts as to HORNUNG and the other officers."  *Id.*  All of the alleged acts
27 were conducted in Defendants' prosecutorial and law enforcement capacity, except as to
28 Batt's December 2000 defamatory statements, which were made in his individual capacity.

Based on the above allegations, Hornung asserts multiple causes of action under 42 U.S.C. §§ 1983, 1985, and 1988 for alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights.  He also asserts a *Monell* claim against the City and OPD, as well as a RICO (Racketeer Influenced and Corrupt Organizations Act) claim against all Defendants.  In addition, Hornung originally asserted a defamation claim and a claim under California Civil Code section 47.5 against Defendant Batt.  However, after Batt filed a motion to strike those causes of action under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, the parties stipulated to the dismissal of those two claims without prejudice, with each party to bear its own costs and attorneys' fees associated with the motion to strike.  Defendants now move to dismiss all of Hornung's remaining claims.

## LEGAL STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In evaluating the sufficiency of the complaint's allegations, a court must assume the facts as alleged in the complaint to be true unless the allegations are controverted by exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint and whose authenticity no party questions. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  A court should not grant dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Moreover, dismissal should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1296 (9th Cir. 1998).

4

**DISCUSSION**

**I.     Hornung's Non-Opposition to Dismissal of Certain Claims**

As an initial matter, Hornung does not contest dismissal of three sets of claims. First, Hornung concedes that he does not state a claim under § 1985. The Court therefore GRANTS Defendants' motion to dismiss all of Hornung's § 1985 claims with prejudice.

Similarly, Hornung concedes that his first three causes of action under 42 U.S.C. § 1983, which do not identify a specific constitutional right alleged to have been violated, are based on an alleged violation of Hornung's Fourth Amendment rights – the same claim raised in Hornung's sixth cause of action. There is no need for such duplication, as Hornung appears to have recognized at oral argument, when he asked for leave to amend to state one "substantive" § 1983 cause of action based on the Fourth Amendment and a second § 1983 conspiracy cause of action. The Court therefore GRANTS Defendants' motion to dismiss Hornung's first three causes of action. Dismissal is without prejudice so that Hornung may combine the appropriate allegations to state a single cause of action against Defendants based on an alleged violation of his Fourth Amendment rights.

Finally, Hornung consents to the dismissal of his due process and equal protection claims. Accordingly, the Court GRANTS Defendants' motion to dismiss these claims with prejudice.

**II.    Fourth Amendment Conspiracy Claim**

Defendants also move to dismiss Hornung's Fourth Amendment conspiracy claim under 42 U.S.C. § 1983. A § 1983 conspiracy violation requires an agreement or meeting of the minds to violate a constitutional right, an overt act in furtherance of the conspiracy, and a constitutional violation. *Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999). The required agreement "need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.*

Defendants move to dismiss Hornung's Fourth Amendment conspiracy claim on a number of bases, the first being that Hornung has failed to allege an agreement or meeting of

the minds. However, this argument is not persuasive under general notice pleading standards, which Defendants agree apply to Hornung's conspiracy claim. *See, e.g., Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005) (holding that "a heightened pleading standard should only be applied when the Federal Rules of Civil Procedure so require"). For example, Hornung alleges that "BATT and HEWISON both intentionally and specifically participated in and joined with MADARANG, the CITY OF OAKLAND, and the OAKLAND POLICE DEPARTMENT, to include HORNUNG in the accusations and allegations of misconduct," FAC ¶ 27, and that "[t]he defendants, and each of them, agreed that the illegal object or course of action was to charge and prosecute HORNUNG maliciously with crimes, and to intentionally and deliberately utilize knowingly false testimony in order to achieve such end," *id.* ¶ 75(d). Although extremely bare-bones, such allegations are sufficient to satisfy Hornung's burden at this stage of the proceedings, particularly considering that, when viewed as a whole and in a light most favorable to Hornung, the complaint's allegations could lead to an inference that a meeting of the minds occurred.

Defendants also argue that they cannot be held liable for bringing criminal charges because that decision was made by the District Attorney's office, which is presumed to have made an independent determination to prosecute. However, the Ninth Circuit squarely rejected that argument in *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004), explaining that "the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." Like the Ninth Circuit in *Awabdy*, this Court cannot say that it would be impossible, based on the allegations in the complaint, for Hornung to demonstrate that Defendants' conduct, including that of Defendant Batt, was instrumental in bringing about legal proceedings against Hornung.

6

Next, Defendants argue that police officers are absolutely immune from liability for testimony given at trial, even if such testimony is perjurious, and that such testimony therefore cannot form the basis for a conspiracy claim. While these are generally true statements, *see Briscoe v. LaHue*, 460 U.S. 325, 335-36, 345-46 (1983) *and Franklin v. Terr*, 201 F.3d 1098, 1101-02 (9th Cir. 2000), the Supreme Court has also held that a complaining witness who wrongfully brings about prosecution, such as an officer who requests an arrest warrant based on false grounds, is not entitled to absolute immunity, *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Ninth Circuit subsequently ruled that *Malley* provides an exception to *Briscoe* so that officers who "functionally served as complaining witnesses who may be said to have initiated [a plaintiff's] prosecution . . . are not entitled to absolute immunity for their false statements." *Harris v. Roderick*, 126 F.3d 1189, 1199 (9th Cir. 1997). In *Harris*, the court held that absolute immunity did not shield defendants who allegedly:

> conspired to cover-up their own misdeeds and to shift the blame to [the plaintiff] by fabricating and disseminating a false version of the events that occurred at Ruby Ridge. The subsequent official testimony was simply a part of the implementation of that conspiracy, a step in the overall plan. We do not believe that the general policy that immunizes false official testimony requires that we preclude Harris from showing the full range of occasions on which [defendants'] falsehoods were uttered, simply because some of them occurred before a grand or petit jury.

*Id.* Similar factual allegations exist in this case, and *Harris* therefore bars Defendants' assertions that they are absolutely immune for damages allegedly caused by their false testimony.

Defendants attempted to distinguish *Harris* at oral argument by asserting that *Harris* is consistent with Defendants' position that absolute immunity applies whenever a witness gives testimony in a setting with the full protections of the adversarial process. Again, this statement may be generally true, s*ee Holt v. Castaneda*, 832 F.2d 123, 127 (9th Cir. 1987) (extending a witness's absolute immunity beyond trial to all adversarial pretrial proceedings), but Defendants have cited no authority that the proposition applies to complaining witnesses. To the contrary, the Ninth Circuit expressly rejected Defendants' position in *Harris*, a case in

7

which the defendants testified both before a grand jury and petit jury (i.e., trial). *See Harris*, 126 F.3d at 1196, 1199.

Finally, Defendants argue that the City and OPD are improper parties to the conspiracy claim because Hornung has failed to identify an official policy, custom, or practice in his conspiracy claims and explicitly bases the liability of these defendants on respondeat superior. This argument fails for two reasons. First, although Defendants are correct that municipal liability under § 1983 cannot be based on respondeat superior, *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002), the cited paragraph of the FAC also alleges that the municipal defendants "are liable individually." FAC ¶ 75(e). Second, as discussed in the next section, Hornung has – contrary to Defendants' assertions – adequately alleged the existence of a policy or practice.

In short, Defendants have failed to persuade the Court that Hornung has failed to state a § 1983 claim based on an alleged conspiracy to violate Hornung's Fourth Amendment rights. Accordingly, Defendants' motion to dismiss such a claim is DENIED.

### III.   *Monell* Claim

Defendants next move to dismiss Hornung's claim under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), which provides that a municipality may be held liable under § 1983 for an officer's unconstitutional actions if those actions were taken pursuant to an official policy, practice, or custom. Defendants contend that Hornung's *Monell* claim must be dismissed because Hornung has not adequately alleged the existence of an official policy or practice.

In making their argument, Defendants rely on cases applying a different standard of review than that applicable on a motion to dismiss. *See, e.g., Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992) (reviewing denial of motion for judgment notwithstanding the verdict or new trial); *Kanae v. Hodson*, 294 F. Supp. 2d 1179 (D. Haw. 2003) (considering motion for summary judgment). At this stage of the proceedings, "[i]t is improper to dismiss . . . a section 1983 complaint alleging municipal liability even if the claim is based on nothing

8

1   more than a bare allegation that the individual officers' conduct conformed to official policy,
2   custom, or practice." *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986).
3   Hornung easily satisfies this minimal standard by alleging the existence of a policy, custom,
4   or practice to violate employees' constitutional rights, *e.g.,* FAC ¶¶ 79, 81-84, and the Court
5   therefore DENIES Defendants' motion to dismiss Hornung's *Monell* claim.  Defendants
6   argue that Hornung's complaint only discusses his own situation, and that one person's
7   factual circumstances cannot constitute a pattern or practice; however, whether the alleged
8   policy or practice actually does exist is a factual matter that cannot properly be resolved on a
9   motion to dismiss.

10   Defendants also asserted in their moving papers that Hornung's *Monell* claim is
11   barred by the statute of limitations.  In opposition, Hornung pointed to California
12   Government Code section 945.3, which provides that a person may not bring suit against a
13   peace officer or public entity "based upon conduct of the peace officer relating to the offense
14   for which the accused is charged, including an act or omission in investigating or reporting
15   the offense or arresting or detaining the accused, while the charges against the accused are
16   pending before a superior court."  The statute further provides that "[a]ny applicable statute
17   of limitations for filing and prosecuting these actions shall be tolled during the period that the
18   charges are pending before a superior court."  *Id.*  Defendants apparently concede the
19   applicability of this statute to Hornung's claims by failing to rebut Hornung's argument in
20   their reply brief or at oral argument.  While Defendants do not concede that all of Hornung's
21   claims are timely even considering section 945.3, that is not a matter that can be resolved on
22   Defendants' motion to dismiss.

23

24   **IV.   Claims Related to Mack and Miller Incidents**

25   In their moving papers, Defendants also sought dismissal of all claims based on
26   incidents involving the arrests of Phillip Miller and Rodney Mack on grounds that such
27   claims are barred by the statute of limitations.  In opposition, Hornung responded that these
28   arrests were part of a general criminal conspiracy charge to obstruct justice brought against

9

1  Hornung under California Penal Code section 182(a)(5).  *See* FAC ¶ 52 (including "an
2  overall, general conspiracy to obstruct justice" among the list of criminal charges brought
3  against Hornung).[1]  Defendants' reply then modified their initial position and, rather than
4  seeking dismissal of claims based on the Mack and Miller incidents, Defendants now assert
5  that "[a]ny incidents not linked to [the overall] conspiracy charge cannot survive a statute of
6  limitations challenge.  Plaintiff, therefore, must identify in his pleadings the incidents
7  identified by the District Attorney in the Overt Acts that formed the basis of the conspiracy
8  charge."  Reply at 8.
9      Defendants, however, cite no support for their contention that the complaint must
10 contain this level of detail, and the Court therefore DENIES Defendants' motion regarding
11 the Mack and Miller incidents.  While the Court agrees that Defendants must know which
12 incidents formed the basis for the general criminal conspiracy charge brought against
13 Hornung, Defendants may obtain such information during discovery.

## V. RICO Claim

Defendants' final argument is that Hornung's RICO claim must be dismissed because Hornung fails to allege a nexus to interstate commerce.  Hornung bases his RICO claim on 18 U.S.C. § 1962(c), which provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  In his RICO allegations, however, Hornung omits reference to "interstate or foreign commerce."  *See* FAC ¶ 124.

To support his RICO claim, Hornung relies on two cases in which RICO claims were allowed to stand against Los Angeles Police Department officers based on false arrest claims:

---

[1] Although Hornung did not present a copy of the charging instrument to the Court, he did represent in his opposition papers that the Miller incident is included in the Sixth Overt Act regarding the general conspiracy charge, and the Mack incident is alleged in the Thirteenth Overt Act of that charge.

10

*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005), and *Guerrero v. Gates*, 110 F. Supp. 2d 1287 (C.D. Cal. 2000). Neither of these cases addressed the interstate commerce issue, but Hornung urges the Court to conclude that both courts must have implicitly concluded that the interstate commerce test was satisfied because the courts otherwise would "likely have dismissed the claim[s] on that ground." Opp'n at 21. However, silence on an issue does not amount to a holding. *See, e.g., Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 692 n.3 (9th Cir. 1991) ("The substantial benefit basis for awarding attorney's fees was not at issue and the court did not discuss it. Silence on the issue could not be interpreted as holding the substantial benefit theory inapplicable to section 185 cases."). The issue before both the *Diaz* and *Guerrero* courts was whether the plaintiff had adequately alleged the type of injury that is redressable under RICO, and it appears that the interstate commerce issue was never raised. *Diaz*, 420 F.3d at 902-03 (noting that the district court's dispositive ruling on standing made it unnecessary for the court to decide whether the complaint suffered from other deficiencies); *Guerrero*, 110 F. Supp. 2d at 1292 (noting that the defendant only argued that the plaintiff "lacks standing to pursue his RICO claims" and did "not dispute that the necessary RICO elements are met"). Thus, *Diaz* does not require, and *Guerrero* does not support, finding that the allegations in this case satisfy the interstate commerce requirement.

On the other hand, RICO requires only "that the individual predicate racketeering acts have a de minimis impact on interstate commerce." *United States v. Juvenile Male*, 118 F.3d 1344, 1347 (9th Cir. 1997). A de minimis impact is one that has "a probable or potential impact on interstate commerce." *Id.* at 1349. Hornung asserts that since drug trafficking has been found to affect interstate commerce for RICO purposes – a proposition undisputed by Defendants – then "a Police Department engaged in the arrest and prevention of drug trafficking is [also] engaged in activities that affect interstate commerce." Opp'n at 22. The Court finds this argument to be somewhat tenuous, and Hornung cites no authority to support finding a sufficient nexus with interstate commerce based on such an attenuated argument.[2]

---

[2] In fact, Hornung fails even to argue that the law requires only a "de minimis" impact on interstate commerce.

11

However, the Court need not resolve the parties' dispute over the interstate commerce requirement because it finds another of Defendants' arguments persuasive. As Defendant Batt argued in his reply brief, and as all Defendants argued at the motion hearing, it appears that Hornung has failed to allege a predicate act under RICO. The RICO statute enumerates predicate acts that qualify as "racketeering activity." 18 U.S.C. § 1961(1). None of Defendants' alleged conduct appears to fall under this definition, and courts have specifically found that perjury and malicious prosecution do not qualify as RICO predicate acts. *E.g., Streck v. Peters*, 855 F. Supp. 1156, 1162 (D. Haw. 1994) (explaining that perjury in federal court may qualify as RICO predicate act, but perjury in state court does not); *Von Bulow v. Von Bulow*, 657 F. Supp. 1134, 1143 (S.D.N.Y. 1987) (holding that "malicious prosecution may not constitute a RICO predicate act"). The Court therefore TENTATIVELY GRANTS Defendants' motion to dismiss Hornung's RICO claim with prejudice because it appears that Hornung has not and cannot allege that Defendants committed any of the predicate acts enumerated in § 1961(1).

The Court's ruling on this issue is tentative because Defendants did not raise the argument regarding predicate acts in their moving papers, and Hornung therefore has not had an opportunity to submit a written opposition. Although Hornung failed to take advantage of his opportunity to respond to this argument at the motion hearing, the Court will nonetheless allow Hornung an opportunity to submit a written opposition out of an abundance of caution.

**CONCLUSION**

In light of all of the above, the Court finds good cause to GRANT IN PART and DENY IN PART Defendants' motion to dismiss as follows:

1. All claims asserted under 42 U.S.C. § 1985, as well as Hornung's due process and equal protection claims, are dismissed with prejudice.

2. Hornung's first three causes of action, which allege violation of 42 U.S.C. § 1983 without identifying particular constitutional rights, are dismissed without prejudice. Hornung may consolidate these claims into a single claim based on an alleged violation of

12

his Fourth Amendment rights.  Hornung may also state a separate claim based on an alleged conspiracy to violate his Fourth Amendment rights.

3. Hornung's tenth cause of action under RICO is tentatively dismissed with prejudice, subject to the following:

(a) If Hornung believes he has or can allege "racketeering activity" as defined in 18 U.S.C. § 1961(1), then he shall file a supplemental opposition of no more than three pages on or before **November 9, 2006.**  Defendants may then file a supplemental reply of no more than three pages on or before **November 16, 2006.**  The matter will then be submitted on the papers unless the Court otherwise orders oral argument.

(b) If Hornung fails to file a timely supplemental opposition, then the tentative ruling dismissing Hornung's RICO claim with prejudice will become final, and Hornung shall file his second amended complaint on or before **November 30, 2006.**

4. In all other respects, Defendants' motion is denied.

**IT IS SO ORDERED.**

Dated:   11/02/06

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT